**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 11-cv-03417-CMA-MJW

COMPREHENSIVE ADDICTION TREATMENT CENTER, INC.,
     a Colorado corporation, and
PAMELA MANUELE,

          Plaintiffs,

v.

DARIA LESLEA, Individually and in her official capacity as Controlled Substance
     Administrator, Division of Behavioral Health, f/k/a Alcohol and Drug Abuse Division,
     Colorado Department of Human Services,
JANET WOOD, Individually and in her official capacity as Director,
     Division of Behavioral Health f/k/a Alcohol and Drug Abuse Division,
     Colorado Department of Human Services,
MARY McCANN, Individually and in her official capacity as Clinical Director,
     Division of Behavioral Health f/k/a Alcohol and Drug Abuse Division,
     Colorado Department of Human Services,
KAREN BEYE, Individually and in her official capacity as Executive Director,
     Colorado Department of Human Services,
JOSCELYN GAY, Individually and in her official capacity as Deputy Executive
     Director, Office of Behavioral Health, Colorado Department of Human Services,
KAREN MOONEY, Individually and in her official capacity as Treatment Field
     Manager, Division of Behavioral Health f/k/a Alcohol and Drug Abuse Division,
     Colorado Department of Human Services, and
THE COLORADO DEPARTMENT OF HUMAN SERVICES, DEPARTMENT OF
BEHAVIORAL HEALTH,

          Defendants.

---

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS BASED ON
QUALIFIED IMMUNITY AND FOR LACK OF SUBJECT MATTER
JURISDICTION PURSUANT TO FED. R. CIV. P. 12(B)(1) AND 12(B)(6)**

---

This matter is before the Court on Defendants Daria Leslea, Janet Wood, Mary

McCann, Karen Beye, Joscelyn Gay, Karen Mooney, and The Colorado Department of

Human Services, Department of Behavioral Health's (collectively, "Defendants") Motion to Dismiss Based on Qualified Immunity and for Lack of Subject Matter Jurisdiction Pursuant to FRCP 12(B)(1) and 12(B)(6).  (Doc. # 22.)  In this Motion, Defendant Department of Behavioral Health ("DBH") contends that it is immune from suit under the Eleventh Amendment.  The six individual defendants (collectively, "the Individual Defendants"), who are all employees of DBH, assert that they are entitled to qualified immunity on the federal claims brought against them.  Defendants also argue that Plaintiffs' state law tort claims are barred by the Colorado Governmental Immunity Act ("CGIA") and should therefore be dismissed.

## I.  **BACKGROUND**[1]

Plaintiff Pamela Manuele, a registered nurse and licensed certified addiction counselor, owns and operates Plaintiff Comprehensive Addiction Treatment Services, Inc. ("CATS").  (Doc. # 1, ¶ 20.)  CATS is a privately funded opioid treatment program located in Denver, Colorado that has treated more than 3,000 patients since it began operating in 1988.  (Doc. # 1, ¶¶ 1, 18.)  CATS helps opioid dependent individuals break their addictions through, among other things, dispensing synthetic opioids such as methadone to its patients.  (*Id., ¶* 18.)

Under Colorado law, DBH administers two separate and distinct regulatory schemes.  (*Id.*, ¶ 28.)  The first regulatory scheme administered by DBH involves the

---

[1] The following facts are taken from Plaintiffs' Complaint (Doc. # 1) and deemed true for purposes of this Motion.

issuance of a Controlled Substance License, which regulates the physical distribution of controlled substances such as methadone.  (*Id.*, ¶ 29.)  The second regulatory scheme administered by DBH involves the issuance of a Treatment Facility License, which regulates a treatment program's methods of treating patients.  (*Id.*, ¶ 30.)

In January of 2005, Defendant Leslea approved CATS' application to renew its treatment facility license for another three years.  (*Id.*, ¶ 36.)  On October 5, 2006, pursuant to DBH regulations, CATS reported to DBH that one of its patients had died of a suspected heroin overdose.  (*Id.*, ¶ 41.)  That day, without conducting an investigation or making any findings of fact, DBH ordered CATS to cease taking new patients or readmitting former patients.  (*Id.,* ¶ 42.)  During the period between October 5, 2006 through July 27, 2007, CATS was not allowed to take new patients or re-admit former patients.  (*Id.,* ¶ 62.)  DBH never provided any reason for the restriction.  (*Id.*) On October 11, 2006, DBH staff, including Defendants Leslea and Mooney, paid an unannounced visit to CATS and demanded to review ten selected patient files; CATS complied with this request.  (*Id.*, ¶ 43.)

CATS submitted its annual application to DBH to renew its controlled substance license on January 8, 2007.  (*Id.*, ¶ 44.)  On January 26, 2007 and February 26, 2007, Defendants Leslea and Mooney conducted additional reviews of patient files.  (*Id.*, ¶¶ 47, 49.)  On April 2, 2007, DBH, through Defendant Leslea, denied CATS' application for a controlled substance license, based on DBH's view that CATS was in violation of the rules and regulations governing the three year treatment license that

DBH had issued to CATS in January of 2005.  (*Id.,* ¶ 51.)  Between October 10, 2006

and April 2, 2007, DBH never informed CATS that its practices and procedures violated

the treatment rules and did not give CATS any opportunity to cure the alleged

deficiencies.  (*Id.,* ¶ 53.)  CATS appealed the denial of its application to renew its

controlled substance license to the Colorado Office of Administrative Courts ("OAC"),

and DBH issued a Notice of Charges on June 23, 2007, that was supplemented on July

27, 2007.  (*Id.,* ¶¶ 58, 60.)  All of the charges contained in the Notice of Charges

concerned alleged violations of CATS' treatment facility license, not its controlled

substance license.  (*Id.*, ¶ 60.)

An Administrative Law Judge ("ALJ") set the case for a seven day trial, spaced

between September 17, 2007 and November 5, 2007.  (*Id.*, ¶ 64.)  The ALJ issued his

decision on January 29, 2008, finding that DBH could not deny CATS' application to

renew its controlled substance license based on allegations that CATS violated the

treatment facility license rules.[2]  (*Id.,* ¶ 68.)  The ALJ cited a decision from another ALJ

that DBH lacked authority to revoke a controlled substance license based on alleged

violations of DBH treatment facility license rules.  (*Id.*)  The ALJ also terminated DBH's

October 5, 2006 order barring CATS from admitting new patients or re-admitting former

patients.  (*Id.,* ¶ 69.)  The ALJ did not decide whether CATS violated the treatment

_____

[2] On February 4, 2008, Defendant Leslea sent an email message to her DBH colleagues stating
that the ALJ's decision was based on a "technicality" and it meant that "we will be back in court."
(*Id.*, ¶ 73.)  Around this time, Defendant Leslea also made statements to a group of
rehabilitation patients that she believed all private opioid clinics in Colorado should be closed.
(*Id.*, ¶ 74.)

facility license rules because DBH had not attempted to revoke CATS' treatment facility license.  (*Id.*, ¶ 70.)

One week before the ALJ issued his decision, CATS applied for renewal of its treatment license.  (*Id.*, ¶ 72.)  DBH denied CATS' application on February 8, 2008, citing 1,150 alleged violations of the treatment facility license rules.[3]  (*Id.,* ¶ 75.)  CATS again appealed to the OAC.  (*Id.,* ¶ 78.)  On March 4, 2008, Defendant Beye, Executive Director of the Colorado Department of Human Services, issued an "Order of Summary Suspension," allegedly based solely upon information provided by DBH employees. The Order of Summary Suspension had the effect of immediately closing CATS, and the next day DBH staff ordered all of CATS' patients to be reassigned to other opioid treatment clinics.  (*Id.,* ¶ 79.)  The Order of Summary Suspension stated, in part:

> The Department has reasonable grounds to believe and finds, after full investigation, that the operation of this treatment program presents a substantial danger to the public health, safety and welfare.  Patients at this facility are at risk and require emergency action.

(*Id.,* ¶ 80.)

---

[3] Plaintiffs allege that, throughout the entire period from October 5, 2005 to February 8, 2008, DBH did not allow CATS to cure any of the violations.  (*Id.*, ¶ 76.)  By way of example, on October 13, 2006, Defendant Leslea informed CATS that it was utilizing a screening form for new patients that was not in compliance with DBH rules and regulations.  Plaintiff Manuele asked what screening form was appropriate, and Defendant Leslea referred Plaintiff Manuele to another DBH employee who told her that the "SUDDS IV" form was the correct form.  However, in May of 2007, Defendant Leslea informed Plaintiff Manuele that the SUDDS IV form was not approved, and filed charges against CATS for failing to utilize an approved screening form. When the ALJ issued his Final Agency Decision on June 30, 2008, he noted that DBH had still not informed CATS or the administrative court what screening form was approved by DBH. (*Id.*, ¶ 77.)

CATS applied for an expedited trial with the OAC, and a trial commenced on March 11, 2008.  (*Id.,* ¶ 88.)  On March 19, 2008, the ALJ issued an order from the bench allowing CATS to reopen immediately.  (*Id.,* ¶ 89.)

On June 30, 2008, the ALJ issued his final agency decision.  (Doc. # 1-1.)  The ALJ found that DBH had proved only two violations of DBH regulations, and that DBH had failed to give CATS a reasonable opportunity to cure such violations.  (*Id.* at 25, 27.)  The ALJ ordered DBH to renew CATS' treatment facility license and its controlled substance license and to lift any restrictions on the intake of new patients.[4]  (*Id.* at 27.)

Plaintiffs initiated this action on December 30, 2011, bringing federal constitutional claims for due process, equal protection, and free speech, as well as eight state law tort claims.  (*Id.*)  Defendants filed the instant motion to dismiss on March 23, 2012.  (Doc. # 22.)  Plaintiffs responded on April 20, 2012, and Defendants replied on May 14, 2012.  (Doc. ## 26, 33.)

## II.  <u>STANDARDS OF REVIEW</u>

Defendants bring the instant motion to dismiss under both Fed. R. Civ. P. 12(b)(1) and 12(b)(6).  Thus, the Court will set forth the proper standard of review for motions under each rule.

---

[4] Plaintiffs also allege multiple instances of harassment from DBH, dating from the end of the trial before the ALJ through 2010.  (*Id.,* ¶¶ 99-130.)  The Court has not included these allegations in the background section of the Order because such allegations do not appear relevant to the federal claims raised here and, for reasons that will be discussed below, the Court abstains from ruling on any of the state law tort claims.

**A.     FED. R. CIV. P. 12(b)(1)**

Dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) is appropriate

when the Court lacks subject matter jurisdiction over the claims asserted in the

complaint.  As set forth by the Tenth Circuit in *Holt v. United States*, the standard of

review for a Rule 12(b)(1) motion is as follows:

> Generally, Rule 12(b)(1) motions to dismiss for lack of subject matter
> jurisdiction take two forms.  First, a facial attack on the complaint's
> allegations as to subject matter jurisdiction questions the sufficiency of
> the complaint.  In reviewing a facial attack on the complaint, a district court
> must accept the allegations in the complaint as true.
>
> Second, a party may go beyond allegations contained in the complaint
> and challenge the facts upon which subject matter jurisdiction depends.
> When reviewing a factual attack on subject matter jurisdiction, a district
> court may not presume the truthfulness of the complaint's factual
> allegations.  A court has wide discretion to allow affidavits, other
> documents, and a limited evidentiary hearing to resolve disputed
> jurisdictional facts under Rule 12(b)(1).  In such instances, a court's
> reference to evidence outside the pleadings does not convert the motion
> to a Rule 56 motion.

*Holt v. United States*, 46 F.3d 1000, 1002-03 (10th Cir. 1995) (internal citations

removed).  Further, the burden of establishing subject matter jurisdiction rests on

the party asserting jurisdiction.  *See Montoya v. Chao*, 296 F.3d 952, 955 (10th

Cir. 2002).

**B.     FED. R. CIV. P. 12(b)(6)**

The purpose of a motion to dismiss under Fed. R. Civ. P. 12(b)(6) for failure to

state a claim is to test "the sufficiency of the allegations within the four corners of the

complaint."  *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).  A complaint will

survive such a motion only if it contains "enough facts to state a claim to relief that is

plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). For a

motion to dismiss, "[t]he question is whether, if the allegations are true, it is plausible

and not merely possible that the plaintiff is entitled to relief under the relevant law."

*Christy Sports, LLC v. Deer Valley Resort Co., Ltd.*, 555 F.3d 1188, 1192 (10th Cir.

2009). "The plausibility standard is not akin to a probability requirement, but it asks for

more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal,*

556 U.S. 662, 678 (2009) (quotation marks and citation omitted).

In reviewing a Rule 12(b)(6) motion, a court must accept all the well-pleaded

allegations of the complaint as true and must construe them in the light most favorable

to the plaintiff. *Williams v. Meese,* 926 F.2d 994, 997 (10th Cir. 1991). Nevertheless,

a complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual

enhancement.'" *Iqbal,* 556 U.S. at 678 (quoting *Twombly,* 550 U.S. at 557). "The

court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the

parties might present at trial, but to assess whether the plaintiff's complaint alone is

legally sufficient to state a claim for which relief may be granted." *Miller v. Glanz,* 948

F.2d 1562, 1565 (10th Cir. 1991).

### III. ANALYSIS

The Court will begin its analysis by addressing Defendants' argument that the

claims against DBH and the Individual Defendants in their official capacities are barred

by the Eleventh Amendment. The Court will then determine whether the Individual

Defendants are entitled to qualified immunity on the federal constitutional claims

brought against them in their individual capacities.[5]

## A. CLAIMS AGAINST DBH AND THE INDIVIDUAL DEFENDANTS IN THEIR OFFICIAL CAPACITIES

In their Motion to Dismiss, Defendants argue that Plaintiffs' federal constitutional

claims, brought under 42 U.S.C. § 1983, must be dismissed as against DBH and the

Individual Defendants in their official capacities.  It is well settled that § 1983 does not

abrogate state sovereign immunity under the Eleventh Amendment.  *See Will v. Mich.*

*Dep't of State Polic*e, 492 U.S. 58, 71 (1989).  Because a suit brought against a state

official in his or her official capacity is considered "a suit against the official's office,"

such claims are also barred by the Eleventh Amendment.[6]  *Id.*  Thus, the Court lacks

subject matter jurisdiction over the § 1983 claims brought against DBH and the

Individual Defendants in their official capacities, and such claims are dismissed under

Fed. R. Civ. P. 12(b)(1).

## B. FEDERAL CONSTITUTIONAL CLAIMS

The Individual Defendants assert that they are entitled to qualified immunity on

all of the federal claims brought against them in their individual capacities.  (Doc. # 22

---

[5] Defendant Beye has asserted that she is entitled to absolute immunity for the Order of Summary Suspension she executed with respect to Plaintiff's treatment facility license.  (Doc. # 22 at 8-10.)  The Court need not reach this issue because it finds that Defendant Beye is entitled to qualified immunity for reasons discussed below.

[6]An exception exists where the suit seeking prospective relief is brought against state employees in their official capacities.  *See Rounds v. Clements*, No. 11-1120, 2012 WL 3764894, at *3 (10th Cir. Aug. 31, 2012) (unpublished) (citing *Will*, 491 U.S. at 71 n.10). Plaintiff does not seek prospective relief, and so this exception does not apply.  (Doc. # 26 at 22) ("prospective relief is not sought in this action").

at 10.)  The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 232 (2009) (quoting *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982) (internal quotation marks omitted)).

"Qualified immunity requires a 'two-step sequence.'" *Morris v. Noe,* 672 F.3d 1185, 1191 (10th Cir. 2012) (quoting *Pearson,* 555 U.S. 223).  When a defendant asserts qualified immunity on a motion to dismiss, the district court must consider (1) whether the facts that a plaintiff has alleged make out a violation of a constitutional right, and (2) whether the right at issue was clearly established at the time of the defendant's alleged misconduct.[7]  *Leverington v. City of Colorado Springs*, 643 F.3d 719, 732 (10th Cir. 2011).  The plaintiff bears the burden of proving both parts of this test.  *See Dodds v. Richardson*, 614 F.3d 1185, 1191 (10th Cir. 2010).

The Individual Defendants contend that Plaintiffs have not alleged sufficient facts to show that the Individual Defendants' conduct violated Plaintiffs' federal constitutional rights.  (Doc. # 22 at 10.)  Further, the Individual Defendants assert that even if their conduct violated Plaintiffs' constitutional rights, such rights were not "clearly established" at the time of the alleged misconduct.  (*Id.*)

---

[7] Ordinarily, the law is "clearly established" if there is Supreme Court or a Tenth Circuit decision on point.  *See Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).  However, the overarching inquiry is "whether the law put officials on fair notice that the described conduct was unconstitutional."  *Id.*

1.   Due Process Claims[8]

Plaintiffs contend that the Individual Defendants violated their due process rights by not allowing Plaintiffs the opportunity to cure any license violations and by conducting an inadequate and incompetent investigation that led to the non-renewal of licenses and the Order of Summary Suspension.  (Doc. # 26 at 15-18.)

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const., amend. XIV, § 1.  There are two types of claims that arise under the Due Process Clause, procedural due process and substantive due process.  The Tenth Circuit has explained the difference between the two types of claims as follows: "[p]rocedural due process ensures the state will not deprive a party of property without engaging fair procedures to reach a decision, while substantive due process ensures the state will not deprive a party of property for an arbitrary reason regardless of the procedures used to reach that decision."  *Hyde Park Co. v. Santa Fe City Council*, 226 F.3d 1207, 1210 (10th Cir. 2000).

At the outset, the Court notes that Plaintiffs have failed to distinguish between the two types of constitutional due process claims.  Additionally, Plaintiffs have brought their claims against all of the Individual Defendants, without any consideration as to whether the allegedly unlawful conduct reasonably can be attributed to all of the

---

[8] The first five claims in the Complaint are brought pursuant to the Due Process Clause. Because Plaintiffs' due process claims are all inter-related, partially redundant, and require the same legal analysis, the Court will consider whether Plaintiffs have stated any due process claims without reference to the specific claims for relief in the Complaint.

Individual Defendants.  The Court will begin by determining whether Plaintiffs'

allegations are sufficient to state a procedural due process claim, and then separately

address whether Plaintiffs have alleged a plausible substantive due process claim.

a)   *Procedural Due Process*

As best the Court can tell, the Complaint alleges two distinct procedural due

process claims based on (1) Defendants' denial of Plaintiffs' applications to renew

their licenses and (2) Defendants' Order of Summary Suspension.[9]  (*See* Doc. # 1,

¶¶ 139, 147.)  To bring a procedural due process claim, Plaintiffs must establish:

(1) the existence of a constitutionally cognizable liberty or property interest; and

(2) a deprivation of that interest without an appropriate level of process or procedural

safeguards.  *See Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1219 (10th Cir.

2006).  The Court looks to state law to determine whether Plaintiffs have a property

right, but "it is purely a matter of federal constitutional law whether the procedure

afforded was adequate."  *Hulen v. Yates*, 322 F.3d 1229, 1247 (10th Cir. 2003).

---

[9] Although Plaintiffs allege that Defendants ordered CATS to stop accepting new patients or re-admitting former patients from October 5, 2006 through July 27, 2007 (Doc. # 1, ¶ 62), Plaintiffs have not specifically raised a procedural due process claim relating to this order.  Even if Plaintiffs did intend to bring such a claim, Plaintiffs never objected to the order to stop accepting new patients or re-admitting former patients.  Under Colorado statute, Plaintiffs were entitled to a hearing on the limitation on their licenses.  *See* C.R.S. § 24-4-104(5).  Because Plaintiffs did not utilize the available procedural protections, Plaintiffs cannot now argue that the Individual Defendants deprived them of due process with respect to the limitation on new patients or re-admitting former patients.  *See Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J*, 464 F.3d 1182, 1192 (10th Cir. 2006) ("Although Kirkland could have immediately filed a grievance challenging his suspension, he chose not to do so.  In light of that, he cannot now allege that the individual Defendants deprived him of post-suspension due process."); *Sandoval v. City of Boulder, Colo.*, 388 F.3d 1312, 1328-29 (10th Cir. 2004) (recognizing that procedural due process can be waived).

Plaintiffs contend that their applications to renew their controlled substance license and treatment facility license were denied because Defendants conducted an inadequate investigation.  Plaintiffs also allege that they were not given the right to cure any license violations.  (Doc. # 26 at 15.)  At the first step of the procedural due process inquiry, the Court must determine whether Plaintiffs had a legitimate property interest in the renewal of their licenses.  To be constitutionally cognizable, a property interest must be both specific and presently enforceable.  *Doyle v. Okla. Bar Ass'n*, 998 F.2d 1559, 1569 (10th Cir. 1993).  Protected property interests are not created by the United States Constitution; rather, they are derived from independent sources such as state laws or administrative rules.  *See Heutzenroeder v. Mesa Ctny. Valley Sch. Dist. 51*, 391 F. App'x 688, 691-92 (10th Cir. 2010).

At first blush, Plaintiffs appear to have had a protected property interest in both their treatment facility license and their controlled substance license.  *See Stidham v. Peace Officer Standards and Training*, 265 F.3d 1144, 1150 (10th Cir. 2001) ("the revocation or removal of a license or certificate that is essential in the pursuit of a livelihood requires procedural due process under the Fourteenth Amendment."); *Ward v. Anderson*, 494 F.3d 929, 934 n.6 (10th Cir. 2007) (suggesting that injury to existing business relationships is "generally sufficient to support a claim under procedural due process").  However, neither Plaintiffs' treatment facility license nor its controlled substance license were actually revoked; rather, DBH denied Plaintiffs' applications for renewal.  Colorado authority holds that "a licensee has no vested right

13

to renewal of a license . . . [t]herefore, a licensee has no property right in the renewal of

a license."  *Morris-Schindler, LLC v. City & Cnty. of Denver*, 251 P.3d 1076, 1085 (Colo.

App. 2010); *cf. Rocky Mountain Rogues, Inc., v. Town of Alpine*, 375 F. App'x 887,

895 (10th Cir. 2010) (citing the Wyoming Supreme Court for the proposition that

"[a] licensing authority should exercise its own discretion as of the date an application

for renewal is submitted.").  Based on this authority, the Court finds that Plaintiffs lacked

a cognizable property interest in the renewal of their treatment facility license and their

controlled substance license.

Even assuming *arguendo* that Plaintiffs had a protected property interest in the

renewal of its licenses, Plaintiffs were provided with sufficient process.  When reviewing

a procedural due process claim, the Court looks to the three-factor balancing test set

forth by the Supreme Court in *Mathews v. Eldridge*, 424 U.S. 310, 334-35 (1976).

The three factors are:

> First, the private interest that will be affected by the official action; second,
> the risk of an erroneous deprivation of such interest through the proce-
> dures used, and the probable value, if any, of additional or substitute
> procedural safeguards; and finally, the Government's interest, including
> the function involved and the fiscal and administrative burdens that the
> additional or substitute procedural requirement would entail.

*Ward*, 494 F.3d at 935 (citation omitted).  Analysis under the procedural due process

clause "is flexible and calls for such procedural protections as the particular situation

demands."  *Id.*

Plaintiffs allege that the Individual Defendants failed to comply with C.R.S. §  24-

4-104(3)(a), when DBH "revoke[d]" CATS' treatment and controlled substance licenses

14

"without first conducting a 'full investigation' that establish[ed] 'objective facts or conduct' that support[ed] the revocation[s]."  (Doc. # 1, ¶ 139.)  Plaintiffs also contend that the Individual Defendants violated § 24-4-104(3)(a) by not allowing Plaintiffs the opportunity to cure any license violations.  However, Plaintiffs' allegation that the Individual Defendants did not comply with state law is not sufficient, by itself, to state a plausible procedural due process claim.[10]  *See Ward*, 494 F.3d at 935 (quoting *Hennigh v. City of Shawnee*, 155 F.3d 1249, 1256 (10th Cir. 1998)) ("a failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process.").  Instead, Plaintiffs must show that the process given fell short of the standards derived from the Due Process Clause.  *See id.*  Plaintiffs have not addressed the *Mathews* factors and have submitted no authority for the proposition that they were entitled to any more process than was provided.  Given the minimal property interest (if any) that Plaintiffs had in the renewal of their licenses, the Court finds that the process given to Plaintiffs was sufficient under the Due Process Clause of the Constitution.

The Court now turns to the slightly closer question of whether the March 4, 2008 Order of Summary Suspension that closed CATS violated Plaintiffs' procedural due process rights.  Because Plaintiffs possessed existing licenses that were affected by

---

[10]  Moreover, the Court notes that Plaintiffs' reliance on § 24-4-104(3)(a) is misplaced.  That subsection concerns the "revocation, suspension, annulment, limitation, or modification" of a license, and Plaintiffs have alleged only that Defendants did not renew Plaintiffs' licenses.  Instead, it is § 24-4-104(7) that sets forth the procedural requirements that an agency must follow when it denies an application for a renewal of a license.  That subsection provides that a licensee must be given a hearing **after** an application was denied.  It is undisputed that Plaintiffs were given such hearings upon request.  Thus, Defendants complied with the requirements of § 24-4-104 with respect to Plaintiffs' applications for the renewal of their licenses.

the Order of Summary Suspension, it appears that Plaintiffs had a legitimate valid property interest that would satisfy the first step of a procedural due process claim.[11] *See Stidham*, 265 F.3d at 1150; *Ward*, 494 F.3d at 934 n.6.

Under C.R.S. § 24-4-104(4)(a), an agency may summarily suspend a license "[w]here the agency has objective and reasonable grounds to believe and finds, upon a full investigation, that the licensee has been guilty of deliberate and willful violation or that the public health, safety, or welfare imperatively requires emergency action and incorporates the findings in its order." A "full investigation" is defined as a "reasonable ascertainment of the underlying facts on which the agency action is based." *Id*. Plaintiffs have alleged that Defendants did not conduct a full investigation as required by this statute. Although the Order of Summary Suspension included a finding that six CATS patients had died over the past two years "due to the negligence of [CATS]," Plaintiffs maintain that there was no "emergency" requiring summary suspension because the six patient deaths occurred over a span of two years, with the last death occurring two months before the Order of Summary Suspension was issued.

In their response to the instant motion, Plaintiffs again fail to address the three *Mathews* factors.[12] Nevertheless, because Plaintiffs appear to have a legitimate

---

[11] Plaintiffs do not allege any facts concerning the specific injury that they incurred as a result of the Order of Summary Suspension. However, because CATS was closed for fifteen days, the Court will assume, for purposes of this Order, that there was some detrimental effect on the health and success of CATS as a result of the Order of Summary Suspension.

[12] Essentially, Plaintiffs have asserted only that Defendants did not comply with the requirements of § 24-4-104(4)(a). As previously noted, a "failure to comply with state or local procedural requirements does not necessarily constitute a denial of due process. *Ward*, 494 F.3d at 935 (citation omitted).

property interest, the Court will apply the three *Mathews* factors to determine whether Plaintiffs were given sufficient process.

As to the first *Mathews* factor – impairment of Plaintiffs' private interest – Plaintiffs "have a significant interest in the health and success" of CATS.  *Ward*, 494 F.3d at 936.  However, "in determining what process is due, account must be taken of the **length** and **finality** of the deprivation."  *Kirkland v. St. Vrain Valley Sch. Dist. No. RE-1J*, 464 F.3d 1182, 1192 (10th Cir. 2006) (emphasis in original) (quoting *Gilbert v. Homar*, 520 U.S. 924, 930 (1997)).  Here, Plaintiffs allege that the Order of Summary Suspension was issued on March 4, 2008 and was rescinded on March 19, 2008 after a trial before an ALJ.  (Doc. # 1, ¶¶ 79, 89.)  Given the relatively short period that CATS was closed, the harm to Plaintiffs' property interest was significantly attenuated.  *See Kirkland*, 464 F.3d at 1192-93 (prompt post-suspension hearing attenuates the effect of suspension).

The second *Mathews* factor – the risk of an erroneous deprivation – is likewise minimized by the prompt post-suspension hearing.  Taking Plaintiffs' allegations as true, a more thorough investigation by the Individual Defendants might have led to a different outcome.  However, Plaintiffs admit that DBH employees conducted some investigation.  (*See* Doc. # 1, ¶ 80) ("**Besides reading through patient files** . . . DBH personnel . . . had never interviewed the patients or CATS staff") (emphasis added).  Such an investigation, limited as Plaintiffs might believe it was, reduces the risk of an erroneous deprivation of property by the government.  Thus, the pre-suspension investigation and

17

the prompt post-suspension hearing greatly minimized the risk of an erroneous

deprivation of property.

Finally, the third *Mathews* factor – the strength of the government's interest –

weighs heavily, if not dispositively, in Defendants' favor.  DBH investigated CATS, at

least in part, because six patients of CATS had died within a relatively short time period.

Thus, DBH's investigation of CATS undoubtedly concerned a matter of "public health

and safety," an area in which the government's police powers are paramount.  *See,*

*e.g.*, *Mackey v. Montrym*, 443 U.S. 1, 17 (1979) ("We have traditionally accorded the

states great leeway in adopting summary procedures to protect public health and

safety.").  The Tenth Circuit has repeatedly recognized that the government has an

especially strong interest "in acting quickly and efficiently to investigate where public

health and safety are concerned, even if doing so creates a greater risk of mistakes."

*Ward*, 494 F.3d at 937; *Camuglia v. City of Albuquerque*, 448 F.3d 1214, 1220 (10th

Cir. 2006) (holding that health inspectors may close a restaurant to protect the health of

patrons and workers without first providing a hearing to the restaurant owner).  Given

DBH's strong interest in protecting the public health and safety, as well as the speedy

post-deprivation hearing given to Plaintiffs, the Court finds that Plaintiffs were afforded

sufficient due process.  Thus, Plaintiffs have failed to state a plausible procedural due

process claim and the Individual Defendants are entitled to qualified immunity because

the facts alleged by Plaintiffs fail to make out a violation of a constitutional right.[13]   *See*

*Leverington*, 643 F.3d at 732.

> b)  *Substantive Due Process*

The standard for assessing an alleged violation of substantive due process is

"whether the challenged government action shocks the conscience of federal judges."

*Ward*, 494 F.3d at 937 (quoting *Moore v. Guthrie*, 438 F.3d 1036, 1040 (10th Cir.

2006)).  "[T]he plaintiff must demonstrate a degree of outrageousness and a magnitude

of potential or actual harm that is truly conscience shocking."  *Id.* (quoting *Uhlrig v.

Harder*, 64 F.3d 567, 574 (10th Cir. 1995).  Although an arbitrary deprivation of an

individual's property right may give rise to a substantive due process clause claim,

"only the most egregious official conduct can be said to be arbitrary in the constitutional

sense."  *County of Sacramento v. Lewis*, 523 U.S. 833, 846 (1998) (internal quotations

omitted).  As the Tenth Circuit has explained:

> It is well settled that negligence is not sufficient to shock the conscience.
> In addition, a plaintiff must do more than show that the government actor
> intentionally or recklessly caused injury to the plaintiff by abusing or
> misusing government power.  The plaintiff must demonstrate a degree

---

[13] Furthermore, Plaintiffs have not cited any authority in which courts have found that a plaintiff's constitutional right to due process was "clearly established" in analogous factual situations.  The most relevant authority found by this Court demonstrates that Plaintiffs do not have a plausible procedural due process claim.  *See Ward*, 494 F.3d 929 (holding that "the *Mathews* factors counsel against finding a procedural due process violation based on the [agency] employees' refusal to provide a formal hearing"); *Camuglia*, 448 F.3d 1214 (holding that health inspectors may close a restaurant to protect the health of patrons and workers without first providing a hearing to the restaurant owner).  Thus, assuming *arguendo* that Plaintiffs alleged a plausible procedural due process claim, the Individual Defendants would still enjoy qualified immunity because Plaintiffs' constitutional right to due process under the circumstances in this case was not a clearly established right.

> of outrageousness and a magnitude of potential or actual harm that is truly
> conscience shocking.  This is a high level of outrageousness.

*Ward*, 494 F.3d at 937-38 (citing *Camuglia*, 448 F.3d at 1222-23).  This "high level of

outrageousness" standard advances three basic principles in evaluating substantive due

process claims: "(1) the need for restraint in defining their scope; (2) the concern that §

1983 not replace state tort law; and (3) the need for deference to local policy-making

bodies in making decisions impacting upon public safety."  *Camuglia*, 448 F.3d at 1223

(quoting *Uhlrig*, 64 F.3d at 574).  Given this high standard, it is no surprise that "little

governmental action is held unconstitutional under this formulation."  *Williams v. Berney*,

519 F.3d 1216, 1221 (10th Cir. 2008) (citation, quotations, alteration omitted).

In their Complaint, Plaintiffs allege the following:

■    Defendants acted "knowingly, maliciously, willfully and wantonly"
     by failing to conduct even a cursory investigation of the facts
     surrounding the allegations they made against Plaintiffs or
     properly supervise those who conducted the investigation.
     (Doc. # 1, ¶¶ 133-34.)

■    Defendants "negligently and intentionally failed to conduct any
     investigation  to conduct any investigation which would support the
     1,150 allegations made by DBH against the Plaintiffs, the denial of
     CATS' controlled substance license, the denial of CATS' treatment
     license or support the Order of Summary Suspension."  (*Id.*, ¶ 140.)

■    Defendants "knowingly, maliciously, willfully and wantonly failed to
     give CATS and Ms. Manuele reasonable opportunity to comply with
     alleged violations of DBH rules and regulations before denying
     renewal of the controlled substance license or the renewal of
     CATS['] treatment license . . . Defendants made allegations of rule
     violations against CATS and Ms. Manuele and then refused to
     respond to Ms. Manuele['s] request for information about what
     CATS could do to comply with DBH regulations.  On one occasion,

DBH mislead Ms. Manuele concerning what screening tool was acceptable to DBH."  (*Id.*, ¶ 148-49.)

■      "As part of Defendants' 1,150 allegations, Defendants alleged that CATS and its failed to comply with regulations on dates and times before the regulation was promulgated . . . .  In essence, Defendants willfully and wantonly, and with complete disregard for the facts, charged CATS with rule violations on dates and times before such rules existed."  (*Id.*, ¶ 155.)

Assuming *arguendo* that Plaintiffs have a cognizable property interest, and accepting as true Plaintiffs' factual allegations, the Court nevertheless finds that Plaintiffs have not alleged a plausible substantive due process claim.

The allegations in the Complaint demonstrate that Defendants conducted an investigation of CATS.  (Doc. # 1, ¶ 43) ("on October 10, 2006, DBH staff, including [Defendants] Leslea and Mooney, made an unannounced visit to CATS and demanded to review ten selected patient files."); (*Id.*, ¶ 47) ("On January 26, 2007 . . . DBH conducted another review of patient files at CATS."); (*Id.*, ¶ 49) ("On February 26, 2007, [Defendants] Leslea and Mooney again appeared at CATS and demanded to see the chart of a patient who had died at the patient's home during February 2007."); (*Id.*, ¶ 54) ("On April 10, 2007 . . . [Defendant] Leslea . . . appeared at CATS and demanded to review twenty-five (25) patient files.") (*Id.*, ¶ 75) (alleging that Defendants also inspected patient files on August 22, 2007, September 11, 2007, November 6, 2007, and January 14, 2008).   Although Plaintiffs criticize both the thoroughness of the investigation and the conclusions drawn from that investigation, such criticisms sound in negligence rather than recklessness.  *See Ward*, 494 F.3d at 937 ("[N]egligence is not sufficient to

21

shock the conscience."). Even if the investigation could be characterized as reckless, the facts alleged by Plaintiffs do not evince "malicious intent or extreme arbitrariness that shocks the conscience" on the part of the Individual Defendants.[14] *Ward*, 494 F.3d at 938-39 (affirming grant of summary judgment on substantive due process claim where plaintiff alleged that agency conducted an improper and inadequate investigation and presented evidence that the agency investigator reported violations of child care regulations that were inaccurate because such evidence did not shock the conscience).

Plaintiffs also contend that Defendants violated their due process rights because the Individual Defendants refused to respond to Plaintiff Manuele's requests for information about how CATS could comply with the regulations. Perhaps some of the alleged violations could have been averted or easily remedied had the Individual Defendants communicated their concerns to CATS. However, the Individual Defendants' failure to respond to requests for information strikes the Court as negligent at most, and is simply not conduct that shocks this Court's conscience. Similarly, with regard to Plaintiffs' allegation that they were cited for violations of DBH treatment rules on dates and times before the rules were promulgated, the Court finds that this allegation also concerns nothing more than negligent conduct. Of the 1,150 alleged rule violations, Plaintiffs have identified only one specific violation based on a rule that had not been promulgated when the alleged violation occurred. Even assuming there were

---

[14] The fact that DBH's decisions to deny CATS' applications for renewal of their licenses and to issue the Order of Summary Suspension were ultimately overturned on appeal has little bearing on the Court's analysis. *See Ward*, 494 F.3d at 939 (noting that the Due Process Clause "is not a guarantee against incorrect or ill-advised government decisions.").

more instances of alleged violations based on rules that were not promulgated at the

time of the alleged violation, Plaintiffs do not claim that the majority or even a sizable

number of the alleged violations suffered from this defect.  Given the sheer number of

alleged violations, it is no great surprise that one (or a few) of the violations would lack

legal basis.  The Court agrees with Defendants that a few alleged violations based on

rules that had not yet been promulgated "amounts to bureaucratic slippage at most."

(Doc. # 22 at 14.)

In short, Plaintiffs have failed to plead facts sufficient to satisfy the demanding

standard for a substantive due process claim.  Even if the Individual Defendants' actions

can be viewed as incorrect, negligent, or even discriminatory, based on the facts of this

case, such conduct does not constitute an outrageous or shocking abuse of power.

Thus, the Individual Defendants are entitled to qualified immunity on Plaintiffs'

substantive due process claims because they have not alleged facts sufficient to show a

violation of a constitutional right.[15]

2.    First Amendment Retaliation Claim

Plaintiffs' Fifth Claim for relief alleges that Defendants have "exhibited a clear

intent to close CATS and deprive Ms. Manuele of her livelihood . . . in retaliation for

Plaintiffs asserting and protecting their constitutional rights and other rights protected by

---

[15] Moreover, even if the Court were to find the allegations sufficient to plead a substantive due process claim, Plaintiffs have not shown that the Individual Defendants were "on fair notice that the described conduct was unconstitutional."  *Clark v. Wilson*, 625 F.3d 686, 690 (10th Cir. 2010).  Thus, assuming *arguendo* that Plaintiffs' allegations were sufficient to state a plausible substantive due process claim, the Individual Defendants would still be entitled to qualified immunity because Plaintiffs' right to due process was not clearly established under of the circumstances of this case.

law." (Doc. # 1, ¶ 161.)  Seemingly out of abundance of caution, Defendants construed

this claim as a First Amendment retaliation claim.  (Doc. # 22 at 15.)  The Court doubts

that Plaintiffs intended to bring such a claim because Plaintiffs cite the Fifth and

Fourteenth Amendments (not the First Amendment) in their Complaint.  Further,

Plaintiffs also allege that Defendants' "actions and threats are a violation of Plaintiffs'

established due process rights."  (Doc. # 1, ¶ 163.)  However, in their Response,

Plaintiffs assert that they have pleaded a First Amendment retaliation claim and cite

the correct legal standard.  Because both parties have briefed the issue, the Court will

analyze whether Plaintiffs have alleged facts stating a plausible First Amendment

retaliation claim, even though such a claim is not apparent on the face of the Complaint.

"[A]ny form of official retaliation for exercising one's freedom of speech . . .

constitutes an infringement of that freedom."  *Worrell v. Henry*, 219 F.3d 1197, 1212

(10th Cir. 2000).  To bring a First Amendment retaliation claim against a non-employer,

a plaintiff must show that: (1) he was engaged in constitutionally protected activity;

(2) the defendant's actions caused him to suffer an injury that would chill a person of

ordinary firmness from continuing to engage in that activity; and (3) the defendant's

actions were substantially motivated to respond to his exercise of the constitutionally

protected activity.  *Id.*

As basis for this claim, Plaintiffs rely exclusively on an email message allegedly

written by Defendant Leslea after the ALJ overturned DBH's denial of Plaintiffs'

application for a renewal of the controlled substance license.  In the email message,

Defendant Leslea wrote that the ALJ ruled on a "technicality" and because the ALJ "did

not review any of the evidence . . . this means we will be back in court." (Doc. # 26 at

19-20) (citing Doc. # 1, ¶ 73.)  This email message does not show that Defendant

Leslea was motivated to take any action in retaliation for CATS' appeal.  To the

contrary, Plaintiffs' allegation demonstrates that Defendant Leslea sought to close

CATS both before and after Plaintiffs appealed the denial of their controlled substance

license.  Thus, Defendant Leslea was not motivated to act **because** Plaintiffs invoked

their right to an administrative hearing, and Plaintiffs cannot satisfy the third element of

their retaliation claim.[16]  *See Worrell*, 219 F.3d at 1212 (plaintiff asserting retaliation

claim must allege facts demonstrating that the defendant was substantially motivated by

that constitutionally protected activity).   Accordingly, the Court finds that the Individual

Defendants are entitled to qualified immunity on Plaintiffs' First Amendment retaliation

claim because the facts do not demonstrate a violation of a constitutional right.

    3.   <u>Equal Protection</u>

    Plaintiffs' final constitutional claim is that Defendants denied Plaintiffs equal

protection of the law by "treat[ing] CATS differently than other similarly situated

methadone clinics by unjustifiably trying to shut CATS down and arbitrarily enforcing

regulations against CATS and not against other methadone clinics."  (Doc. # 1, ¶ 227.)

    To succeed on a "class of one" equal protection claim, Plaintiffs must plead facts

showing that "(1) it has been intentionally treated differently than those similarly

situated, and (2) the difference in treatment was objectively irrational and abusive."

---

[16] It is highly doubtful that Plaintiffs' allegations satisfy the second element of a retaliation claim. However, as Plaintiffs have clearly failed to allege facts to support the third element, the Court need not reach that issue.

*Rocky Mountain Rogues*, 375 F. App'x at 895-96. "Class-of-one claimants must show similarity in all material respects," which is a substantial burden. *Id.* at 896. It is therefore necessary for a class-of-one plaintiff "to provide a specific and detailed account of the nature of the preferred treatment of the favored class." *Jennings v. City of Stillwater*, 383 F.3d 1199, 1214 (10th Cir. 2004).

Plaintiffs' conclusory allegation that other methadone clinics were treated differently is not sufficient to bring a class-of-one equal protection claim. As Defendants point out, Plaintiffs have not identified any other clinics, let alone alleged facts showing that the other clinics were similar "in all material respects." As such, Plaintiffs have not pleaded sufficient facts to sustain an equal protection claim and the Individual Defendants are entitled to qualified immunity on this claim. *See Rocky Mountain Rogues*, 375 F. App'x at 896 (affirming summary judgment where the plaintiff did "not present a sufficient comparator.").

## C.   PENDENT STATE LAW CLAIMS

Plaintiff's Complaint includes eight state law tort claims: outrageous conduct, malicious prosecution, intentional interference with prospective contractual relations, defamation, vicarious liability (against DBH), negligent supervision (against DBH), abuse of process, and intentional interference with contract. (Doc. # 1, ¶¶ 165-218.) Defendants assert that they are entitled to immunity on these state law tort claims under the Colorado Governmental Immunity Act.

Under 28 U.S.C. § 1367(c), "district courts may decline to exercise supplemental jurisdiction over [state law] claim[s] . . . if . . . the district court has dismissed all claims

over which it has original jurisdiction." *See also Smith v. City of Enid By and Through Enid City Comm'n,* 149 F.3d 1151, 1156 (10th Cir.1998) ("When all federal claims ;2803;2803have been dismissed, the court may, and usually should, decline to exercise jurisdiction over any remaining state claims.").  The Court has already dismissed all of Plaintiffs' federal claims over which it had original jurisdiction, and Court declines to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims.[17]

## IV.  CONCLUSION

Based on the foregoing, it is ORDERED that the Defendants' "Motion to Dismiss Based on Qualified Immunity and for Lack of Subject Matter Jurisdiction Pursuant to FRCP 12(b)(1) and 12(b)(6)" (Doc. # 22) is GRANTED and this case is DISMISSED.

DATED:  January    31st   , 2013

BY THE COURT:

_____
CHRISTINE M. ARGUELLO
United States District Judge

---

[17] Although the Court has discretion to retain state law claims upon the dismissal of all federal law claims, "that discretion should be exercised in those cases in which, given the nature and extent of pretrial proceedings, judicial economy, convenience, and fairness would be served by retaining jurisdiction." *Anglemyer v. Hamilton Ctny. Hosp.*, 58 F.3d 533, 541 (10th Cir. 1995). None of these considerations weigh in favor of retaining jurisdiction because the case is still in its infancy and discovery has been stayed pending the determination of the instant motion.